IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania, :
Department of Environmental :
Protection :
 : No. 367 C.D. 2018
    v. :
 : Argued:  December 11, 2018
Green 'N Grow Composting, LLC :
and Stephen R. Lehman, :
     Appellants :


BEFORE: HONORABLE ROBERT SIMPSON, Judge
    HONORABLE PATRICIA A. McCULLOUGH, Judge
    HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION BY
JUDGE McCULLOUGH       FILED:  December 31, 2018


   Green 'N Grow Composting, LLC and Stephen R. Lehman (collectively Appellants) appeal from the February 20, 2018 Order of the Lancaster County Court of Common Pleas (trial court), which granted the Pennsylvania Department of Environmental Protection's (Department) petition to enforce and, in doing so, held that Appellants violated a consent agreement and subsequent court order directing them to remove solid waste from the property located at 266 Douts Hill Road, Martic Township, Lancaster County, Pennsylvania (the Property).

**Facts and Procedural History**

   Green 'N Grow Composting, LLC, through its sole owner, Mr. Lehman, operated a composting facility on the Property under a research and development

(R&D) permit that was issued by the Department in March of 2014 and expired on December 31, 2015. Appellants also obtained a general permit for the composting facility that expired in March 2017. (Trial Ct. Op. at 1-2.)

In May 2014, the Department conducted an inspection and found that Appellants committed numerous violations of the Solid Waste Management Act (SWMA), Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S. §§6018.101-6018.1003. As a result, the Department issued an administrative order rescinding Appellants' permits until they could demonstrate their ability to comply with the SWMA. Appellants apparently did so and the Department reinstated the permit in July 2014. The Department also granted Appellants' request to extend their R&D permit until December 2015, although it appears that Appellants continued to conduct their R&D operation at the composting facility even after the extended permit expired. (Trial Ct. Op. at 2.)

After receiving numerous odor complaints, the Department conducted further inspections of Appellants' operation in September 2016 and issued a notice of violations. Following additional complaints by neighbors, the Department conducted another inspection in October 2016 and subsequently issued a compliance order, noting more violations. Appellants filed an appeal of that order with the Environmental Hearing Board but, prior to the conclusion of those proceedings, the Department and Appellants executed a consent agreement in January 2017 (January Consent Agreement), which permitted Appellants to continue composting until March 1, 2017, provided they comply with certain conditions. *Id.*; *see also* S.R.R. 502b-22b.

In April 2017, the Department again inspected Appellants' composting operation and, having found multiple violations of the January Consent Agreement, filed a petition to enforce its terms. On April 28, 2017, the trial court entered a rule to

2

show cause as to why the Department's petition should not be granted. Appellants filed preliminary objections to the enforcement petition and the Department responded with a motion to strike. Just prior to the hearing scheduled by the trial court for August 28, 2017, the Department and Appellants reached another agreement, which was read into the record at the hearing and made an order of the Court (August 28, 2017 Order). The August 28, 2017 Order did not, however, supersede the January Consent Agreement pursuant to a stipulation of the parties.[1] Instead, it established additional conditions and time for Appellants to terminate composting operations and included a provision that "all solid waste and compost is to be removed from 266 Douts Hill Road by December 31st, 2017." (Trial Ct. Op. at 2-3) (quoting S.R.R. at 202b).

On November 28, 2017, Appellants' counsel withdrew their appearance believing that the issue was resolved; however, when additional complaints were made to the Department, it filed a new petition to enforce. The trial court scheduled a hearing for February 5, 2018, to determine whether the August 28, 2017 Order had been violated. Appellants, proceeding *pro se*, filed an untimely answer to the petition to enforce on January 10, 2018.[2] The Department requested an expedited hearing "because of the inundation of daily complaints from neighbors of Appellant[s'] property regarding malodors," which the court denied. (Trial Ct. Op. at 3.) Mr. Lehman then issued subpoenas to eight employees of the Department and four of his neighbors, seeking their medical and veterinary records, and demanding their attendance at depositions. The Department moved to quash the subpoenas and the trial court granted the motion. *Id.* at 3-4.

---

[1] *See* Supplemental Reproduced Record (S.R.R.) at 203b.

[2] In its opinion, the trial court notes that Appellants filed an amended answer despite not having filed an original answer. (Trial Ct. Op. at 3.)

3

The trial court held a two-day hearing on February 5, and February 15, 2018, regarding Appellants' compliance with the court's January Consent Agreement and August 18, 2017 order. Appellants attended and were represented by new counsel. At the hearing, Anthony Rathfon, Waste Program Manager for the Southcentral Regional Office of the Department, testified that he observed numerous plastic bottles, metal cans, and food packaging items interspersed with the soil throughout the Property when he inspected it on January 8, 2018. Mr. Lehman did not dispute this finding, acknowledging that he failed to remove all solid waste from the Property by December 31, 2017. *Id.* at 4.

The following exchange took place during the hearing on February 5, 2018, between Mr. Lehman and counsel for the Department:

> Q. Mr. Lehman, just because you stopped the composting process doesn't mean that whatever metals or plastics were in the materials suddenly vanished, correct?
> A. Correct.
> Q. In fact, on walking around [the Property] there's visible pieces of plastic and metal in the ground, correct?
> A. I'm not sure about metal.
> Q. Plastic, you'll agree with me on plastic?
> A. There's plastic, but there's plastic in many fields along the roadways.
> Q. We're talking about [the Property] though, correct?
> A. Correct.

(S.R.R. at 344b.) Further, Megan Kreider, the Site Manager for Green 'N Grow and Mr. Lehman's daughter, also testified at the hearing and acknowledged that plastic and metal were intermixed in the soil on the Property after the date of compliance. (Trial Ct. Op. at 5.)

Additionally, Mr. Lehman admitted during the hearing that he had dumped large quantities of the adulterated material from the Property into a hole on his own adjoining private property at 300 Douts Hill Road (Personal Property), instead of

in a permitted landfill.[3]  Mr. Rathfon testified that he discovered the material that Mr. Lehman relocated to the Personal Property and observed a fresh layer of dirt covering a pile of packaging material, including "plastics sticking up through the soil."  *Id.* (quoting S.R.R. at 371b).

On February 20, 2018, the trial court issued an order finding that Appellants had violated the January Consent Agreement and the August 28, 2017 Order and granted the Department's petition to enforce the January Consent Agreement.  The trial court authorized the Department to access the Property as needed "to remove all solid waste located within three hoop structures appearing in the [Department]'s Exhibits 8G-8I and 8M-8V, the berm containing solid waste appearing in the [Department]'s Exhibit 8L and all solid waste appearing in the [Department]'s Exhibits 8K, 8V, 8Y, and 8Z."  (Trial Ct. Feb. 20, 2018 Order at ¶1.)  The order also directed Appellants not to modify the condition of the Property without further order of the court; ordered Appellants not to hinder the Department during its performance of duties under the order; and ordered the costs of abatement incurred by the Department to be paid by Appellants within 30 days of a written request for payment with a penalty of $100.00 per day for failure to pay the amount in the written request.  *Id.* at ¶¶3-6.

Appellants filed an appeal on March 20, 2018.  The trial court directed Appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  Appellant complied, and the trial court issued an opinion in support of its order, pursuant to Pa.R.A.P. 1925(a).

In its opinion, the trial court stated that the testimony of Mr. Lehman and Ms. Kreider "indicated that either Appellants were not familiar with their duty to remove the solid waste from [the] [P]roperty or that they did not make any reasonable

---

[3] Mr. Lehman testified that he was "not aware of any restriction [on] removing that material." (S.R.R. at 360b.)

5

good faith efforts to comply with the Order[] of this Court." (Trial Ct. Op. at 5.) The court continued, "The latter possibility is bolstered by [] Appellants['] attempts to avoid their obligations and obscure their non-compliance with the January 18, 2017 Consent [Agreement] and August 28, 2017 Order by dumping large quantities of the affected material into a hole on Mr. Lehman's adjoining private property at 300 Douts Hill Road instead of in a permitted landfill." *Id.*

On appeal,[4] Appellants argue that the trial court abused its discretion by failing to dismiss the Department's enforcement action "when [the Department]'s main witness testified that the allegations in the [e]nforcement petition were false"; by "changing the matter from an [e]nforcement [h]earing to a comprehensive hearing at the last minute"; and by "entering a vague order that was devoid of means for determining what constitutes 'solid waste.'" (Appellants' Br. at 7.)

**Discussion**

In Appellants' first issue, they assert that the trial court erred in refusing to dismiss the enforcement petition where, at the hearing, Mr. Rathfon[5] was repeatedly questioned about the violations giving rise to the enforcement petition during cross-examination and responded that there were no such violations when the enforcement petition was filed or thereafter, up to and including at the time of the hearing. Appellants, however, have failed to develop this argument in any substantive fashion as they have provided no citations to the record in support of their argument that Mr.

---

[4] "Our review on this appeal is limited to determining whether the trial court's findings are supported by competent evidence and whether an error of law was committed." *Department of Environmental Protection v. Blue Chip Transportation Co.*, 61 A.3d 296, 299 (Pa. Cmwlth. 2012).

[5] In their brief, Appellants refer to a "Tony Rathbone," but presumably are referring to Mr. Anthony Rathfon, Waste Program Manager for the Southcentral Regional Office of the Department.

Rathfon made these alleged statements, nor do they cite to any legal authority in support of their argument. As the Court is unable to conduct any meaningful review of this argument, it is waived for lack of development.[6] *See* Pa.R.A.P. 2101 ("[I]f the defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter may be quashed or dismissed."); Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, *followed by such discussion and citation of authorities as are deemed pertinent.*" (emphasis added)); (b) ("If reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, *a reference to the place in the record where the matter referred to appears*." (emphasis added)). *See also Commonwealth v. Perez*, 93 A.3d 829, 838 (Pa. 2014) ("[T]o the extent [an] appellant's claims fail to contain developed argument or citation to supporting authorities and the record, they are waived . . . .").

We nonetheless note the following. The January Consent Agreement specifically stated that solid waste was to be deposited in a "permitted landfill." (S.R.R. at 53b-55b.) The subsequent August 28, 2017 Order, which Appellants stipulated did not supersede the January Consent Agreement, S.R.R. at 203b, required Appellants to remove "all solid waste and compost . . . from 266 Douts Hill Road by December 31st, 2017." (S.R.R. at 202b). Thus, at a minimum, Appellants had until December 31, 2017, to dispose of the solid waste in a permitted landfill. The Department alleged,

---

[6] While Appellants attach to their brief various pages of what appear to be transcribed testimony from the hearing, Appellants have not explained why these pages are relevant or how the testimony supports their argument. Appellants' arguments are not self-proving and, without any legal or factual development or citation to the record, are waived.

and Mr. Lehman acknowledged, that instead of disposing of the solid waste in a landfill Appellants simply relocated it to the adjacent Personal Property. (S.R.R. 345b-348b, 351b, 360b-61b.) Further, Mr. Lehman acknowledged that solid waste *remained visible on the Property after December 31, 2017*. (S.R.R. at 344b.) Thus, Appellants violated both the January Consent Agreement and the August 28, 2017 Order by, at a minimum, allowing solid waste to remain on the Property after December 31, 2017, and by failing to dispose of the solid waste in a permitted landfill. As such, we cannot agree with Appellants that the trial court erred in refusing to dismiss the petition to enforce where there is substantial evidence supporting the trial court's finding that Appellants violated the January Consent Agreement and the August 28, 2017 Order.

In their second issue, Appellants argue that the court erred in refusing to grant a continuance. Appellants contend that, during the pre-trial conference, the trial court, after being advised that the alleged violations were not true, changed the hearing to a "comprehensive [h]earing and proceeded with the [h]earing." (Appellants' Br. at 8.) While acknowledging that the pre-trial conference scheduled for February 5, 2018, was not transcribed, Appellants assert that they did object to converting the pre-trial conference into a hearing, but the trial court "made it clear that no continuances would be given and that the [h]earing would proceed as scheduled." *Id.*

In its 1925(a) opinion, the trial court addresses this argument, stating that "Appellants did not object at the time of the hearing and I consider the issue waived." (Trial Ct. Op. at 9.) As Appellants are unable to show that they raised an argument as to the type of hearing at any point below, the issue is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

8

Even if the issue were not waived, Appellants' argument is unpersuasive. In their brief, Appellants do not distinguish what they term a "hearing" from a "comprehensive hearing," nor do they make an effort to explain how they were prejudiced by this alleged change in the type of hearing or describe why they were unprepared to proceed. Further, the trial court noted that it stated on the record numerous times that the issue before it was whether Appellants had complied with the the January Consent Agreement and the court's August 28, 2017 Order. There is support for this in the record. At the beginning of the hearing, the court stated, "This is the date and time scheduled for a hearing relating to compliance or noncompliance with the [January] Consent [Agreement] and subsequent modifications previously held by this Court." (S.R.R. at 329b). The court subsequently stated, "I'm going to be making the ruling if there's a violation of this agreement, and it's going to be dealt with. If there's no violation of the agreement, then it's going to come to an end today as well." *Id.* at 358b. Finally, at the end of the hearing, the trial court reiterated, "[W]hat I have before me is all the original agreements, the consent [agreement] of January 18th, 2017, and the stipulated order of 8/28/17." *Id.* at 471b.

"It is well settled that the grant or refusal of a continuance rests in the discretion of the court or administrative agency to which the application is made, and its exercise of this discretion will not be reviewed except in clear cases of abuse." *Blackledge v. Pennsylvania State Police*, 435 A.2d 309, 311 (Pa. Cmwlth. 1981). Here, we are satisfied that, even if Appellants could demonstrate that they raised the issue below, the trial court did not abuse its discretion in denying the request for a continuance where Appellants have not explained how they were prejudiced by the court's decision to proceed with the February 2, 2018 hearing and where the court

9

repeatedly stated throughout the hearing the issue before it without objection from Appellants.[7]

In their final issue, Appellants state that, "throughout the pre-litigation period" they requested clarification on "various terms, including but not limited to 'solid waste,'" but the Department "continually provided inconsistent definitions" and "mostly referred Appellants to various websites and/or sections of the Pennsylvania Code that had nothing to do with definitions or examples of the requested definitions of terms." (Appellants' Br. at 9.) Appellants assert, "For the most part, [they] were left to guess at definitions or try to come up with them on their own." *Id.*

Appellants state that this vague use of terms also occurred in the trial court's order, as it "lacked any substantive guidance regarding 'solid waste.'" (Appellants' Br. at 9.) They assert that the term was defined by the court for the first time in its 1925(a) opinion and, even there, the opinion cites to various definitions for "solid waste" in contexts other than the composting. Although they do not provide any citation for the case, Appellants direct this Court to *Association of Battery Recyclers, Inc. v. United States Environmental Protection*, 208 F.3d 1047 (D.C. Cir. 2000), which they argue addressed a similar issue regarding a vague definition of solid waste.

In *Association of Battery Recyclers*, the District of Columbia Circuit held, *inter alia*, that the United States Environmental Protection Agency did not properly define "solid waste" in the regulations it promulgated dealing with residual materials

---

[7] Additionally, even if we were to agree with Appellants that the hearing was solely for the purpose of addressing the Department's petition to enforce, Appellants were nonetheless on notice that the issue of their failure to remediate the Property would be addressed since, as the trial court observed, the petition to enforce specifically alleged that Appellants failed "to remove all pieces of food packaging waste from the grounds of Green 'N Grow, which is a violation of [35 P.S. §6018.301], and 25 Pa. Code § 299.11(4)." (S.R.R. at 9b.) As such, we find no merit in Appellants' argument that the trial court erred in failing to grant a continuance.

10

generated in mining and mineral processing operations because it based the definition on an improper interpretation of the term "discarded" and the court's precedent. *Id.* at 1056. As the Department notes, *Association of Battery Recyclers*, is not relevant here as it concerned challenges to a federal statute, mining and mineral processing, and a federal agency's regulation defining solid waste in terms of residual materials generated, reclaimed, and stored. As such, we do not find the case persuasive.

Upon review, we hold there is substantial evidence in the record that the term solid waste was sufficiently defined, such that both Appellants and the Department were aware of what specifically the court was referring to when it used the term "solid waste" in the February 20, 2018 order.

The trial court, in its 1925(a) opinion, stated that "the term 'solid waste' is defined in the SWMA and refers to 'municipal, residential, or hazardous waste' and as was stated ad nauseum during the two-day hearing, 'solid waste' includes garbage, refuse, and pre-consumer packaged food." (Trial Ct. Op. at 6) (quoting Section 103 of the SWMA, 35 P.S. §6018.103). Section 103 of the SWMA defines "Solid waste" as "[a]ny waste, including but not limited to, municipal, residual or hazardous wastes, including solid, liquid, semisolid or contained gaseous materials. The term does not include coal ash or drill cuttings." 35 P.S. §6018.103. During the hearing, the trial court specifically reiterated this definition while handing down its ruling that Appellants violated the court's prior orders by failing to remove the refuse on the Property. *See* S.R.R. at 472b.

Furthermore, in the order, the trial court specifically described where the solid waste was located on the Property, stating that the Department was authorized "to remove all solid waste located within three hoop structures appearing in the [Department]'s Exhibits 8G-8I and 8M-8V, the berm containing solid waste appearing

11

in the [Department]'s Exhibit 8L and all solid waste appearing in the [Department]'s Exhibits 8K, 8V, 8Y, and 8Z." (Trial Ct. Feb. 20, 2018 Order at ¶1.) Upon review of these exhibits in the supplemental reproduced record, (S.R.R. at 644b-46b, 650b-60b, 662b-63b), we agree that "[i]t takes only a cursory glance at the referenced exhibits to see that solid waste is present in these areas and are subject to removal pursuant to the [January Consent Agreement] and the [August 28, 2017 Order]." (Trial Ct. Op. at 6.) Clearly, the various plastic bottles, metal cans, furniture, and food packaging material observed in these exhibits qualify as "solid waste" under the SWMA definition.

Finally, throughout the proceedings, the Department made clear to Appellants that it considered the plastic water bottles, aluminum cans, glass containers, construction debris, furniture materials, plastic pales and tarping, and food packaging waste that it observed and documented on the Property to be "solid waste," which was to be removed to a permitted landfill. *See* S.R.R. at 5b-11b, 34b, 52b, 84b-85b, 125b-27b. As we stated in *Starr v. Department of Environmental Resources*, "the construction given a statute by those charged with its execution and application is entitled to great weight and should not be disregarded unless it is clear that the agency's interpretation is incorrect." 607 A.3d 321, 323 (Pa. Cmwlth. 1992). Here, we find no error in the Department's interpretation of the term "solid waste" to include the garbage and refuse depicted in the Department's exhibits. As such, we find no merit in Appellants' contention that they were left without any "substantive guidance" from the Department or the trial court regarding the term solid waste. (Appellants' Br. at 9.)

Accordingly, for all of these reasons, the February 20, 2018 order of the trial court is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania,
Department of Environmental
Protection

v.

Green 'N Grow Composting, LLC
and Stephen R. Lehman,
     Appellants

:
:
:
:
: No. 367 C.D. 2018
:
:
:
:
:
:
:

## ***ORDER***

   AND NOW, this 31ˢᵗ day of December, 2018, the February 20, 2018 Order of the Lancaster County Court of Common Pleas is hereby affirmed.


       _____
       PATRICIA A. McCULLOUGH, Judge