# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeffrey M. Mandler and Nuclear          :
Imaging Systems, Inc.,                   :
                   Petitioners    :
                                 :
                  v.                 :
                                 :
Commonwealth of Pennsylvania,            :    No. 483 F.R. 2014
                   Respondent    :


Jeffrey M. Mandler and Cardiovascular   :
Concepts, P.C.,                          :
                   Petitioners    :
                                 :
                  v.                 :
                                 :
Commonwealth of Pennsylvania,            :    No. 484 F.R. 2014
                   Respondent    :    Argued:  February 11, 2020


BEFORE:   HONORABLE ANNE E. COVEY, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                       FILED:  March 2, 2020

        Jeffrey M. Mandler (Mandler), Nuclear Imaging Systems, Inc. (NIS) and Cardiovascular Concepts, P.C. (CVC) (collectively, Taxpayers) petition this Court for review of the Board of Finance and Revenue's (Board) August 27, 2014 orders[1] denying their Petitions for Refund (Refund Petitions) of the $180,168.46 Taxpayers remitted to the Pennsylvania Department of Revenue (Revenue) on July 31, 2013 to satisfy employer withholding liens.  There are two issues before this Court: (1)

---

[1] The Board's August 27, 2014 orders were mailed on September 3, 2014.  *See* Taxpayers' Br. Attachments.

whether Taxpayers waived their appeal because their brief does not comply with the Pennsylvania Rules of Appellate Procedure (Rules); and (2) whether Taxpayers satisfied their burden of proving entitlement to the refunds. After review, we affirm.

**Facts**

Pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1571(f), Taxpayers and the Commonwealth of Pennsylvania (Commonwealth) submitted a joint Stipulation of Facts (Stipulation).[2] According to the Stipulation, Mandler owned NIS and CVC, Pennsylvania corporations with principal places of business in Malvern, Pennsylvania.[3] *See* Stip. ¶¶ 3-4. Pursuant to Sections 316(a) and 320 of the Tax Reform Code of 1971 (Code),[4] 72 P.S. §§ 7316.1(a),[5] 7320, Taxpayers were employers responsible for withholding their employees' payroll taxes in trust for the Commonwealth. *See* Stip. ¶¶ 2-4. On August 4, 2000, NIS and CVC commenced

---

[2] A review of determinations of the Board is governed by [Rule] 1571. Although this Court hears such cases in its appellate jurisdiction, it functions essentially as a trial court. Therefore, this Court must consider a record made by the parties specifically for the Court rather than one certified to the Court from the proceedings below.

*Armco, Inc. v. Commonwealth*, 654 A.2d 1191, 1192 (Pa. Cmwlth. 1993) (citations omitted). Rule 1571(f) mandates that the parties "prepare and file a stipulation of such facts as may be agreed to[.]" Pa.R.A.P. 1571(f). "The facts stipulated by the parties are binding and conclusive and should be regarded as this Court's findings of fact." *Quest Diagnostics Venture, LLC v. Commonwealth*, 119 A.3d 406, 410 n.4 (Pa. Cmwlth. 2015), *aff'd*, 148 A.3d 448 (Pa. 2016). "'However, this Court may draw its own legal conclusions.'" *Am. Elec. Power Serv. Corp. v. Commonwealth*, 184 A.3d 1031, 1034 n.7 (Pa. Cmwlth.), *aff'd*, 199 A.3d 880 (Pa. 2018) (quoting *Kelleher v. Commonwealth*, 704 A.2d 729, 731 (Pa. Cmwlth. 1997)). The parties declared in the Stipulation: "[N]o evidence of [] facts other than in this Stipulation need be adduced in this matter." Stip. at 2.

Revenue is represented by the Commonwealth's Office of Attorney General, which has acted on Revenue's behalf throughout these proceedings.

[3] NIS was a Pennsylvania corporation and CVC was a Pennsylvania professional corporation. *See* Stip. ¶¶ 3-4.

[4] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7101-10004.

[5] Added by Section 4 of the Act of August 31, 1971, P.L. 362.

2

voluntary reorganization bankruptcy proceedings in the United States Bankruptcy Court for the Eastern District of Pennsylvania (Bankruptcy Court), pursuant to Chapter 11 of the Bankruptcy Code.[6]  *See* Stip. ¶ 4.  On September 18, 2000, the Bankruptcy Court ordered the joint administration of NIS's and CVC's bankruptcy actions.  *See* Stip. ¶ 8.  On October 6, 2000, Revenue filed proofs of claims with the Bankruptcy Court seeking, among other taxes,[7] NIS's and CVC's Pennsylvania employer withholding taxes (Taxes).[8]  *See* Stip. ¶ 9, Stip. Ex. A.

From October 29, 2000 to September 1, 2001, Revenue issued 10 assessment notices to NIS and Mandler (individually, and in his capacity as NIS's president) for their Taxes for consecutive tax periods from January 1, 1999 to June 30, 2001, plus interest and penalties, in the total amount of $110,331.60.  *See* Stip. ¶ 14.  Between October 29, 2000 and June 3, 2001, Revenue issued nine assessment notices to CVC and Mandler (individually, and in his capacity as CVC's president) for their Taxes for consecutive tax periods from January 1, 1999 to March 31, 2001, plus interest and penalties, in the total amount of $70,486.89.  *See* Stip. ¶ 15.

On April 17, 2001, Taxpayers entered into an Amended Stipulation of Settlement and Order (Settlement Order) to resolve certain creditor claims, and to allow the sale of NIS's and CVC's assets to Integral Nuclear Associates, LLC (Integral) pursuant to an April 11, 2001 Asset Purchase Agreement[9] (as amended by

---

[6] 11 U.S.C. §§ 1101-1195.  Mandler also filed for Chapter 11 bankruptcy on September 12, 2000.  *See* Stip. ¶ 7.

[7] The other taxes included corporate net income taxes, capital stock-franchise taxes and corporate loan taxes.  *See* Stip. Ex. A at 2, 7.

[8] In addition to the Taxes, NIS and CVC owed taxes to other creditors, including the Internal Revenue Service (IRS), the Pennsylvania Department of Labor & Industry, and state taxing authorities in Delaware, Maryland and New Jersey.  *See* Stip. ¶ 13, Stip. Ex. D.  By April 26, 2001 Amended Stipulation of Settlement and Order, Taxpayers settled the claims made by DVI Financial Services, Inc., National Century Financial Enterprises, Inc., NPF X, Inc., NPF VI, Inc. and the IRS.  *See* Stip. ¶ 10, Stip. Ex. B.

[9] The parties did not include the Asset Purchase Agreement as a Stipulation exhibit.

the Settlement Order), which would facilitate reorganization.[10]  *See* Stip. ¶ 10, Stip. Ex. B.  Thereunder, Integral agreed to purchase certain of NIS's and CVC's assets out of bankruptcy, and to issue a "promissory note made payable to [Taxpayers] to fund payments to state taxing authorities."[11]  Stip. Ex. B at 8.  On May 1, 2001, Integral's counsel sent United Savings Bank, *inter alia*, $66,215.49 to be held in an interest-bearing state tax escrow account.  *See* Stip. ¶¶ 37-38, Stip. Exs. R, S.

On June 8, 2001, Taxpayers filed a proposed Second Amended Joint Plan of Reorganization (Proposed Plan), in which they suggested in Section 4.2.B: "[Taxpayers] shall distribute $66,000[.00] to state taxing authorities.  These claims are estimated at $300,000[.00]. . . .   Mandler shall make monthly payments to [Taxpayers] to pay any deficiency."  Stip. Ex. P at 13; *see also* Stip. ¶ 35.  Revenue objected to the Proposed Plan.  *See* Stip. ¶ 36, Stip. Ex. Q.

On August 20, 2001, the Bankruptcy Court converted NIS's and CVC's bankruptcy actions to Chapter 7 liquidation proceedings.  *See* Stip. ¶ 11.  Thereafter, Revenue filed amended proofs of claim – on September 14, 2001 against CVC and on November 15, 2001 against NIS – seeking the Taxes.[12]  *See* Stip. ¶ 12, Stip. Ex. C.

On January 7, 2002, Integral's counsel instructed United Savings Bank to close out the state tax escrow account and forward the proceeds thereof (which was

---

[10] In their brief to this Court, Taxpayers reference an April 17, 2001 Bankruptcy Court order which, in paragraph 4, "provides for a transfer of [Taxpayers'] assets [to Integral] . . . free of all liens."  Taxpayers' Br. at 12.  However, the Settlement Order does not contain that language, and no such order is referenced in or attached to the Stipulation.  *See* Stip. Ex. B.

[11] The amount of the promissory note specified in paragraph 10(b) of the Settlement Order is illegible.  *See* Stip. Ex. B at 8.  However, Taxpayers contend in their brief to this Court that the amount was $50,000.00.  *See* Taxpayers' Br. at 17.  The amount was later amended to $66,215.49.  *See* Taxpayers' Br. at 17.

[12] Like in the original proofs of claim, the amended proofs of claim sought corporate net income taxes, capital stock-franchise taxes and corporate loan taxes in addition to the Taxes.  *See* Stip. Ex. C at 2, 7.

then $67,113.00) to Bankruptcy Trustee Christine Shubert (Trustee). *See* Stip. ¶ 39, Stip. Exs. T, U. Revenue did not receive any of the escrowed funds.

During 2002 and 2005, Revenue filed liens against Taxpayers in the Chester County Common Pleas Court. *See* Stip. ¶ 16, Stip. Ex. E. On May 18, 2005, Trustee issued her amended Chapter 7 Proposed Distribution of Property, pursuant to which the Trustee paid Revenue $1,043.29 relative to claims against CVC and $755.49 for claims against NIS on August 3, 2005. *See* Stip. ¶¶ 17-18, Stip. Exs. F, G. Those payments were not made in satisfaction of the Taxes or Taxpayers' other state tax debts.[13] On April 13, 2006, Trustee certified that the estate was fully administered – all bankruptcy estate money had been distributed to creditors and the bankruptcy estate accounts had zero balances. *See* Stip. ¶ 40, Stip. Ex. U.

By July 30, 2013 letter, Revenue notified Taxpayers' counsel (Counsel) that their lien payoff figure was $180,168.46. *See* Stip. ¶ 19, Stip. Ex. H. Taxpayers remitted $180,168.46 to Revenue on July 31, 2013. *See* Stip. ¶ 20, Stip. Ex. I. On August 20, 2013, Revenue asked the Chester County Common Pleas Court to mark Taxpayers' liens satisfied. *See* Stip. ¶ 21, Stip. Ex. J.

However, on November 13, 2013, Taxpayers filed the Refund Petitions with Revenue's Board of Appeals (BOA) seeking return of their $180,168.46, arguing that the Taxes had already been paid from the escrow account. *See* Stip. ¶¶ 22-24. On January 23, 2014, the BOA denied the Refund Petitions, stating relative to both NIS and CVC:

> [Taxpayers] filed for bankruptcy and [] an escrow account
> was established for the payment of state taxes. The record

---

[13] According to the Trustee's itemized payment list, the $1,043.29 was paid on CVC's $22,343.31 administrative priority claim and $755.49 was paid on NIS's $16,158.09 administrative priority claim. *See* Stip. Ex. C at 2, 7 and Stip. Ex. F at 7. The amended proofs of claim reflect that those administrative priority claims were made pursuant to Section 507(a)(1) of the Bankruptcy Code, 11 U.S.C. § 507(a)(1) (relating to trustee expenses and domestic support obligations). *See* Stip. Ex. C at 2, 7.

does not provide any evidence that notice of the escrow account was provided to [Revenue]. There is no evidence indicating that these funds were used to pay the outstanding state tax liabilities. In fact, [Revenue's] records indicate that [Revenue] did not receive payment from these escrowed funds. Accordingly, [Taxpayers] ha[ve] failed to prove that [they are] entitled to a refund.

Stip. Exs. K (BOA NIS Dec. at 2), L (BOA CVC Dec. at 2);[14] *see also* Stip. ¶¶ 25-26. On April 4, 2014, Taxpayers appealed to the Board. *See* Stip. ¶¶ 27-29.

The Board conducted hearings on December 19, 2013. On August 27, 2014, the Board denied the Refund Petitions. *See* Stip. Exs. M (Board NIS Dec. at 5), L (Board CVC Dec. at 4-5); *see also* Stip. ¶¶ 30-31. On September 24, 2014, Taxpayers appealed to this Court.[15]

## Discussion

### 1. Briefing Defects

Revenue argues that Taxpayers' appeal should be dismissed because their brief fails to comply with the Rules.[16] Specifically, Revenue contends that Taxpayers' brief contains substantial defects, including: incomplete citations and

---

[14] Taxpayers also requested abatement of the penalties and interest, which the BOA denied on the basis that Taxpayers were delinquent for 9 (CVC) and 10 (NIS) consecutive tax periods since 1999, and they failed to prove that they acted in good faith, without negligence or intent to defraud. *See* Stip. ¶¶ 14, 15; Stip. Exs. K (BOA NIS Dec. at 2), L (BOA CVC Dec. at 2).

[15] 'Our scope of review in tax appeals is . . . limited to the construction, interpretation and application of a [s]tate tax statute to a given set of facts.' *United Serv[s.] Auto[.] Assoc['*]n v. Commonwealth*, . . . 618 A.2d 1155, 1156 ([Pa. Cmwlth.] 1992) (quoting *Escofil v. Commonwealth*, . . . 406 A.2d 850, 852 ([Pa. Cmwlth.] 1979)).

*Am. Elec. Power Serv. Corp.*, 184 A.3d at 1034 n.7.

By October 5, 2015 order, this Court consolidated Taxpayers' appeals. By October 4, 2016 order, the parties were ordered to file a stipulation of facts.

[16] Despite Taxpayers' claim that they filed an amended Brief of Petitioner correcting their briefing errors, *see* Taxpayers' Reply Br. at 10, App. C, simply attaching an amended brief as an appendix to Taxpayers' Reply Brief was not the proper method of doing so.

6

missing page numbers in the Table of Authorities; misreferenced, incomplete or missing case and rule citations which do not appear in the Table of Authorities; and missing headings, legal authority and record citations in the Argument portion of their brief. Revenue asserts that Taxpayers' errors have forced Revenue to speculate about Taxpayers' legal arguments and ultimately preclude this Court's proper review.

This Court recognizes that "[t]he [Rules] . . . set forth the fundamental requirements every appellate brief must meet." *Commonwealth v. Perez*, 93 A.3d 829, 837 (Pa. 2014). In particular, Rule 2119 specifies, in relevant part:

> **(a) General rule.** The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.
>
> **(b) Citations of authorities.** Citations of authorities in briefs shall be in accordance with [Rule] 126 governing citations of authorities.
>
> **(c) Reference to record.** If reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears (*see* [Rule] 2132).

Pa.R.A.P. 2119. Further, Rule 2101 mandates:

> Briefs . . . shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, if the defects are in the brief . . . of the appellant and are substantial, the appeal or other matter may be quashed or dismissed.

Pa.R.A.P. 2101. Thus, when "the Court is unable to conduct any meaningful review of [the] argument, it is waived for lack of development." *Dep't of Envtl. Prot. v. Green 'N Grow Composting, LLC*, 201 A.3d 282, 286 (Pa. Cmwlth. 2018).

However,

> [w]hile an appeal may be dismissed or quashed when a defect in a brief is 'substantial,' Pa.R.A.P. 2101, we may ignore even 'egregious violations' of the Rules . . . if these defects do not preclude meaningful appellate review. *Richardson v. P[a.] Ins[.] Dep['t]*, 54 A.3d 420, 426 (Pa. Cmwlth. 2012) (quoting *Seltzer v. Dep[']t of Educ[.]*, 782 A.2d 48, 53 (Pa. Cmwlth. 2001)). Our Supreme Court has cautioned that the 'extreme action of dismissal should be imposed by an appellate court sparingly, and clearly would be inappropriate when there has been substantial compliance with the [R]ules and when the moving party has suffered no prejudice.' *Stout v. Universal Underwriters Ins[.] Co.*, . . . 421 A.2d 1047, 1049 ([Pa.] 1980); *see also Giovagnoli v. State Civil Serv[.] Comm['n] (Monroe C[ty.] Children [&] Youth Ser[s.])*, . . . 868 A.2d 393, 399 ([Pa.] 2005).

*Arnold v. Workers' Comp. Appeal Bd. (Lacour Painting, Inc.)*, 110 A.3d 1063, 1067-68 (Pa. Cmwlth. 2015).

Here, although Taxpayers did not complete and reference their citations and/or the Table of Authorities, and failed to include specific headings, legal authority and record citations in the Argument portion of their brief, because Taxpayers' position is clearly stated, such failures did not prejudice Revenue and do not preclude this Court's meaningful review of Taxpayers' appeal. Accordingly, this Court declines to dismiss Taxpayers' appeal based solely on these briefing defects.[17]

Notwithstanding, this Court acknowledges that under the Conclusion section of their brief to this Court, "Taxpayer[s] request relief pursuant to [Section 1983 of the United States Code,] 42 U.S.C. § 1983 [(relating to civil rights deprivation actions)] and attorney's fees pursuant to [Section 1988 of the United

---

[17] Though we chose not to do so in this case, Counsel is reminded that this Court could have quashed this appeal for the Rules violations; accordingly, Counsel is admonished that future infractions will be at his clients' peril.

States Code,] 42 U.S.C. § 1988 [(relating to proceedings in vindication of civil rights)]." *See* Taxpayers' Br. at 23. Because Taxpayers failed to mention any civil rights violations in their petition for review or their Statement of Questions Involved and did not develop arguments to support any such claims, those claims are waived. *See Batoff v. State Bd. of Psychology*, 718 A.2d 364, 367 (Pa. Cmwlth. 1998), *rev'd on other grounds,* 750 A.2d 835 (Pa. 2000) ("Under [Rule] 1513(a), . . . constitutional issues not raised in the petition for review, nor fairly comprised in the objections stated therein, are waived."); *see also Commonwealth v. Spotz*, 18 A.3d 244 (Pa. 2011) (such waiver applies to undeveloped constitutional rights claims); *Mun. of Mt. Lebanon v. Gillen*, 151 A.3d 722, 727 n.5 (Pa. Cmwlth. 2016) ("Appeal of an issue is waived where the appellant fails to include it in the statement of questions involved section of her brief and fails to address the issue in the argument section of the brief.").

## 2. Refund Entitlement

Initially, "a party appealing from a denial of a tax refund . . . has the burden of proof in a *de novo* proceeding before th[is Court]." *Sabatine v. Commonwealth*, 442 A.2d 210, 212 n.6 (Pa. 1981) (italics added). Taxpayers argue that they satisfied their burden of proving their entitlement to the refunds. Specifically, they contend that Integral set aside escrow funds for the express purpose of satisfying their state tax obligations and that Revenue's failure to timely claim those funds during the bankruptcy proceedings resulted in the Trustee using them to pay other debts and, thus, Revenue was estopped from thereafter collecting those monies from Taxpayers.

Section 316(a) of the Code specifies:

> Every employer maintaining an office or transacting business within [the Commonwealth] and making payment

of compensation (i) to a resident individual, or (ii) to a nonresident individual taxpayer performing services on behalf of such employer within this Commonwealth, shall deduct and withhold from such compensation for each payroll period a tax computed in such manner as to result, so far as practicable, in withholding from the employe's compensation during each calendar year an amount substantially equivalent to the tax reasonably estimated to be due for such year with respect to such compensation. The method of determining the amount to be withheld shall be prescribed by regulations of [Revenue].

72 P.S. § 7316.1(a). Section 320 of the Code clarifies:

Every person[18] required to deduct and withhold tax under [S]ection 316[(a) of the Code] is hereby made liable for such tax. For purposes of assessment and collection, any amount required to be withheld and paid over to [Revenue] and any additions to tax penalties and interest with respect thereto, shall be considered the tax of the person. All taxes deducted and withheld pursuant to [S]ection 316[(a) of the Code] or under color of [S]ection 316[(a) of the Code] shall constitute a trust fund for the Commonwealth and shall be enforceable against such person, his representative or any other person receiving any part of such fund.

72 P.S. § 7320. "[T]he employer has no right to this withholding once wages are paid; such withholding is commonly referred to as 'trust fund tax' precisely because the employer holds it in trust for the [g]overnment." *In re Dutch Masters Meats, Inc.*, 182 B.R. 405, 411 (Bankr. M.D. Pa. 1995). Accordingly, the Code required Taxpayers to withhold employee payroll taxes and hold them in trust for the Commonwealth, and further authorized Revenue to enforce liens against Taxpayers for the withheld monies.

Moreover, Section 523(a)(1)(A) of the Bankruptcy Code provides:

---

[18] Section 201(e) of the Code defines "person" as "[a]ny natural person, association, fiduciary, partnership, corporation or other entity . . . . Whenever used in any clause prescribing and imposing a penalty . . . the term 'person,' . . . as applied to a corporation, [shall include] the officers thereof." 72 P.S. § 7201(e). This Court has ruled that a corporate officer can be personally liable for a corporation's withholding taxes during periods in which he controlled the corporation. *Brown v. Commonwealth*, 670 A.2d 1222 (Pa. Cmwlth. 1996).

A discharge under [Chapter 7 of the Bankruptcy Code] does not discharge an individual debtor from any debt . . . for a tax . . . of the kind and for the periods specified in [S]ection . . . 507(a)(8) of [the Bankruptcy Code], whether or not a claim for such tax was filed or allowed[.[19]]

11 U.S.C. § 523(a)(1)(A).  Section 507(a) of the Bankruptcy Code specifies:

The following expenses and claims have priority in the following order: . . . Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for . . . a tax required to be collected or withheld and for which the debtor is liable in whatever capacity[.]

11 U.S.C. § 507(a).

Further, the United States Bankruptcy Court for the Northern District of Illinois, has ruled that "taxes described in [Section] 507(a)([8])(C) [of the Bankruptcy Code], often referred to as 'trust fund' taxes, are never dischargeable[,] no matter how long the unpaid tax obligations have been outstanding.  1 Robert E. Ginsberg, *Bankruptcy* § 11.06[b] at 899 (2[]d ed. 1989)."  *In re Torres*, 117 B.R. 379, 384 (Bankr. N.D. Ill. 1990); *see also Dutch Masters Meats, Inc.*, 182 B.R. at 411 ("It is because of th[e] trust relationship that, unlike other tax obligations, trust fund taxes are nondischargeable . . . .").  Therefore, whether or not Revenue filed claim petitions for them, and no matter how much time has passed, the Taxes were trust fund taxes that Taxpayers could not discharge in a Chapter 7 bankruptcy proceeding.

Taxpayers' claim that the Chapter 7 bankruptcy proceeding relieved them of their liability for the Taxes because the escrowed funds were "for the sole purpose of paying the [Taxes] . . ." is meritless.  Taxpayers' Br. at 14.  This Court acknowledges that, pursuant to the Settlement Order, Integral agreed to, and paid into an escrow account, monies "to fund payments to state taxing authorities."  Stip. Ex. B

---

[19] A taxing body's failure to file a proof of claim bars it from obtaining a distribution from the estate in a bankruptcy proceeding, but does not affect its authority to collect the tax debt. *City of Phila. v. Carpino*, 915 A.2d 169 (Pa. Cmwlth. 2006).

11

at 8. However, neither the Settlement Order nor the May 1 and June 12, 2001 escrow letters, or any other record document, specifies that the escrowed funds were set aside for the express purpose of satisfying the Taxes. A taxpayer's bare assertions are generally insufficient proof in tax cases. *See Camp Hachshara Moshava of New York v. Wayne Cty. Bd. for Assessment and Revision of Taxes*, 47 A.3d 1271 (Pa. Cmwlth. 2012); *see also Fiore v. Commonwealth*, 668 A.2d 1210 (Pa. Cmwlth. 1995), *aff'd*, 690 A.2d 234 (Pa. 1997); *Bruce & Merrilees Elec. Co. v. Commonwealth*, 530 A.2d 994 (Pa. Cmwlth. 1987).

The record likewise belies Taxpayers' assertion that "adequate cash funds had been set aside by [the Settlement Order] to pay to [Revenue] the [Taxes] . . . ." Taxpayers' Br. at 13. It is evident from the Proposed Plan that Taxpayers knew they owed more than $300,000.00 in various state taxes and, based on the amended proofs of claim, they were aware that more than $180,000.00 thereof was owed to Revenue for the Taxes. *See* Stip. Ex. C at 3-5, 8-9, 11 and Ex. P at 13. Notwithstanding, only $66,215.49 was placed into the state tax escrow account, which was clearly inadequate to satisfy Taxpayers' liability for the Taxes. *See* Stip. ¶¶ 37-38, Stip. Exs. R, S.

In addition, there is no record evidence that Revenue was aware that the escrowed funds existed. Taxpayers did not point to any record notifying Revenue about the escrowed funds. The May 1 and June 12, 2001 escrow letters are neither addressed nor copied to Revenue, and Revenue was not a party to the Settlement Order.[20] A settlement agreement is essentially a contract that is binding on the parties thereto, and is governed by contract law principles. *Roe v. Pa. Game Comm'n*, 147 A.3d 1244 (Pa. Cmwlth. 2016). A "general principle of contract law [is] that an agreement cannot legally bind persons who are not parties [thereto]." *Chambers Dev.*

---

[20] The IRS negotiated and was a party to the Settlement Order. *See* Stip. Ex. B at 7-9, 13.

*Co., Inc. v. Commonwealth ex rel. Allegheny Cty. Health Dep't*, 474 A.2d 728, 731 (Pa. Cmwlth. 1984). Here, the Settlement Order declared: "Nothing in this [Settlement Order] may be relied upon or is intended for the benefit of any party other [than] those who have executed this [Settlement Order] below." Stip. Ex. B at 10, ¶ 20. Therefore, notwithstanding Taxpayers' claims to the contrary, neither the Settlement Order nor any other record document informed Revenue about the escrowed funds.

Based on the foregoing, the Board properly denied Taxpayers relief, because employer-withheld income taxes are trust fund taxes which are not dischargeable in bankruptcy. The Board further reasoned:

> [T]he [Settlement Order] does not prohibit [Revenue] from collecting the outstanding employer withholding liability from [Taxpayers]. [Revenue] was not a party to [the Settlement Order], as a representative of [Revenue] did not sign the [Settlement Order]. The [Settlement Order] merely required that [Taxpayers'] assets transfer to Integral free of encumbrances, and it did not remove [Taxpayers'] liability for the tax. Lastly, the documentation provided by [Taxpayers] fails to show that the funds were set aside specifically for [Revenue], as [Taxpayers] owed tax liabilities to multiple states.

Stip. Exs. M (Board NIS Dec. at 5), L (Board CVC Dec. at 4-5); *see also* Stip. ¶¶ 30-31.

Notwithstanding, Taxpayers declare that Revenue was barred by the equitable legal principles of estoppel and laches from collecting the Taxes in 2013 because it failed to claim them during the bankruptcy proceedings. This argument is, likewise, without merit.

This Court has held that "[e]quitable estoppel [and] laches . . . cannot vary the statutory requirements in the [Code]. Neither the [Board] nor this Court has the power to alter . . . the [Code] based on equitable principles." *Quest Diagnostics*

13

*Venture, LLC v. Commonwealth*, 119 A.3d 406, 413-14 (Pa. Cmwlth. 2015), *aff'd*, 148 A.3d 448 (Pa. 2016) (citations omitted).

> [I]n order to apply the doctrine of equitable estoppel to a Commonwealth agency: the party sought to be estopped 1) must have intentionally or negligently misrepresented some material *fact*, 2) know[n] or ha[d] reason to know that the other party would justifiably rely on the misrepresentation and 3) induc[ed] the other party to act to his detriment because of his justifiable reliance on the misrepresentation. In addition, '[o]ne who asserts estoppel must establish the essential elements thereof by clear, precise, and unequivocal evidence.' [*Pa. Liquor Control Bd. v. Venesky*, 516 A.2d 445,] 448 [(Pa. Cmwlth. 1986)].

*Yurick v. Commonwealth*, 568 A.2d 985, 990 (Pa. Cmwlth. 1989) (emphasis added). However, "'estoppel cannot be created by representations or opinions concerning matters of *law*.'" *Id.* at 990 (quoting *Gabovitz v. State Auto. Ins. Ass'n,* 523 A.2d 403, 406 (Pa. Super. 1987) (citations omitted)) (emphasis added). This Court has more specifically concluded that "[n]o errors or misinformation . . . can estop the government from collecting taxes legally due." *Am. Elec. Power Serv. Corp. v. Commonwealth*, 160 A.3d 950, 960 (Pa. Cmwlth. 2017) (quoting *DS Waters of Am., Inc. v. Commonwealth*, 150 A.3d 583, 592 (Pa. Cmwlth. 2016)); *see also Yurick*.

"The essence of any claim of laches is an estoppel as a result of prejudicial delay." *Stahl v. First Pa. Banking & Tr. Co.*, 191 A.2d 386, 390 (Pa. 1963); *see also Commonwealth ex rel. Pa. Attorney Gen. Corbett v. Griffin*, 946 A.2d 668, 676 n.9 (Pa. 2008) ("[T]he doctrine of laches contains an estoppel component . . . , and it is sometimes referred to as estoppel by laches.)" (quotation marks omitted)).

> '[L]aches . . . bars relief when a . . . party is guilty of want of due diligence in failing to promptly institute an action to the prejudice of another.' *Stilp v. Hafer*, . . . 718 A.2d 290, 292 ([Pa.] 1998); *accord Sprague v. Casey*, . . . 550 A.2d 184, 187 ([Pa.] 1988). . . . Whether laches applies is a question of law. . . . However, applicability of the doctrine

14

of laches is a factual determination made on a case-by-case basis.  []

*Wheels Mech. Contracting & Supplier, Inc. v. W. Jefferson Hills Sch. Dist.*, 156 A.3d 356, 362 (Pa. Cmwlth. 2017).

> Historically, our Supreme Court has been reluctant to permit a party to assert the doctrine of laches against a state's exercise of its taxing power.  *See, e.g., Commonwealth v. W*[.] *M*[*d.*] [*R.R.*] *Co*[.], . . . 105 A.2d 336 ([Pa.] 1954) . . . (cannot estop the government from collecting taxes which are legally due); *Commonwealth v. A.M. Byers Co*[.], . . . 31 A.2d 530 ([Pa.] 1943) (no estoppel can be asserted against the Commonwealth in the exercise of its taxing power).  In the *Western Maryland Railway Co*[.][, formerly *Western Maryland Railroad Co.*,] case, ou[r] Supreme Court held that the laches defense could not be asserted so as to prevent the state from collecting legally due taxes on property when it failed to assess the same for a number of years.  Further, in that case, the [Supreme] Court held that a state or other sovereignty cannot be estopped by any acts or conduct of its officers or agents in the performance of a governmental function and that no errors or misinformation of the officers or agents can estop the government from collecting legally due taxes.

*In re Estate of Trowbridge*, 920 A.2d 901, 906 n.5 (Pa. Cmwlth. 2007); *see also Borough of Braddock v. Sullivan Plumbing, Inc.*, 954 A.2d 672 (Pa. Cmwlth. 2008). Although courts have held that a taxing authority's delay may bar its claims for interest and penalties attributable thereto, the courts have consistently upheld the imposition of the underlying taxes owed.  *See W. Md. R.R. Co.*; *see also Borough of Braddock*; *In re Estate of Leitham*, 726 A.2d 1116 (Pa. Cmwlth. 1999).

In the instant matter, pursuant to Section 523(a)(1)(A) of the Bankruptcy Code and Sections 316(a) and 320 of the Code, regardless of when or whether Revenue claimed the Taxes, the record reflects that Taxpayers collected the Taxes, Taxpayers were aware that they owed them, and Taxpayers were at all times liable for them.  Moreover, Taxpayers were cognizant of Revenue's ongoing attempts to collect

the Taxes. Revenue filed proofs of claim for the Taxes on October 6, 2000 relative to Taxpayers' Chapter 11 reorganization cases, and amended proofs of claim relative to their Chapter 7 liquidation proceedings in September and November 2001. From October 2000 to September 2001, Revenue issued assessment notices to Taxpayers for the Taxes. Revenue also filed liens for the Taxes in 2002 and 2005. In 2013, Revenue sought and Taxpayers paid the outstanding liens. Taxpayers did not prove based on the record before this Court that Revenue intentionally or negligently misrepresented any material fact that induced Taxpayers to act to their detriment, *Yurick*, or that any lack of due diligence by Revenue prejudiced Taxpayers. *Wheels Mech. Contracting & Supplier, Inc.* Accordingly, Taxpayers' equity arguments fail.

## Conclusion

For all of the above reasons, the Board's August 27, 2014 orders denying Taxpayers' Refund Petitions are affirmed.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeffrey M. Mandler and Nuclear :
Imaging Systems, Inc., :
                    Petitioners :
                     :
        v. :
                     :
Commonwealth of Pennsylvania, : No. 483 F.R. 2014
                Respondent :
                     :
Jeffrey M. Mandler and Cardiovascular :
Concepts, P.C., :
                    Petitioners :
                     :
        v. :
                     :
Commonwealth of Pennsylvania, : No. 484 F.R. 2014
                Respondent :

## O R D E R

AND NOW, this 2nd day of March, 2020, the Board of Finance and Revenue's August 27, 2014 orders are affirmed.

Unless exceptions are filed within 30 days pursuant to Pennsylvania Rule of Appellate Procedure 1571(i), this Court's order shall become final.

_____
ANNE E. COVEY, Judge